**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MATT KLINE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PYRAMID HEALTHCARE, INC.<br><br>Defendant. | Case No.:<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Matt Kline, individually and on behalf of all others similarly situated, brings this Class Action Complaint (the "Action") against Pyramid Healthcare, Inc. ("Pyramid" or "Defendant"), and alleges upon personal knowledge as to Plaintiff and Plaintiff's own actions, and upon information and belief as to all other matters, as follows:

## I. NATURE OF THE ACTION

1. Plaintiff brings this Action against Defendant for its failure to secure and safeguard personally identifiable information and protected health information that was entrusted to Defendant.

2. Defendant is a provider of behavioral health and addiction treatment services headquartered in Altoona, Pennsylvania.

3. Upon information and belief, Defendant experienced a data security incident in which an unauthorized actor calling itself "Vortex" gained access to Defendant's computer systems containing the sensitive personal data of Plaintiff and other current and former patients of Defendant, including names, dates of birth, addresses, Social Security numbers, health insurance information, medical record information, and diagnosis and treatment information (the "Private

Information").[1]

4. The actions of Defendant related to this Data Breach (defined below) are unconscionable. Upon information and belief, Defendant failed to implement practices and systems to mitigate against the risks posed by Defendant's highly deficient IT practices. As a result of these failures, Plaintiff and Class members face a litany of harms that accompany data breaches of this magnitude and severity.

5. As such, Plaintiff, individually and on behalf of all others similarly situated, brings this Action for restitution, actual damages, nominal damages, injunctive relief, disgorgement of profits, and all other relief that this Court deems just and proper.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this Action pursuant to 28 U.S.C. § 1332(d), as provided by the Class Action Fairness Act, because this is a civil action filed under Rule 23 of the Federal Rules of Civil Procedure; the amount in controversy exceeds $5,000,000, exclusive of interest and costs; there are more than 100 members of the Class; and at least one member of the Class is a citizen of a state different from that of Defendant.

7. This Court has personal jurisdiction over Defendant because Defendant is a Pennsylvania corporation with its principal place of business in Altoona, Pennsylvania.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this District and, upon information and belief, a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

---

[1] Ransomware.live, *PYRAMID HEALTHCARE – Vortex*, https://www.ransomware.live/id/UFlSQU1JRCBIRUFMVEhDQVJFQFZvcnRleA (last visited Nov. 18, 2026)

## III. PARTIES

9. Plaintiff Matt Kline is, and at all times relevant to this Action was, a resident and citizen of Pennsylvania. Plaintiff is a patient of Defendant. Upon information and belief, Plaintiff's Private Information was maintained in Defendant's systems and was compromised in the Data Breach (as defined below).

10. Defendant Pyramid Healthcare, Inc. is a Pennsylvania corporation, with its principal place of business located at 271 Lakemont Park Boulevard, Altoona, Pennsylvania 16602.

## IV. FACTUAL ALLEGATIONS

### *A. Defendant's Business and Collection of Private Information*

11. Defendant is a behavioral healthcare provider, offering addiction and substance use treatment and mental health recovery services. Defendant operates 49 locations in seven states: Pennsylvania, Virginia, Maryland, North Carolina, New Jersey, Massachusetts, and West Virginia.

12. In the course of doing business, Defendant has acquired a significant amount of highly sensitive and valuable Private Information from its current and former patients, including Plaintiff and Class members.

13. In order to receive health care services from Defendant, Plaintiff and Class members trusted that Defendant would use their data only for business purposes in a manner that was safe and secure.

14. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for ensuring the safety and security of Plaintiff's and Class members' Private Information and for protecting such Private Information from unauthorized disclosure and exfiltration.

15. Plaintiff and Class members relied on Defendant to keep their Private Information confidential and only to make authorized disclosures of this Private Information, which Defendant failed to do.

16. Defendant acknowledges in its Privacy Policy that it is "legally required to maintain the privacy of [patients'] protected health information (PHI) under the Health Insurance Portability and Accountability Act (HIPAA) and other federal and state laws."[2]

***B. The Data Breach***

17. Upon information and belief, in or before November 2026, a cybercriminal group calling itself "Vortex" gained unauthorized access to Defendant's computer systems and exfiltrated data from them (the "Data Breach"). Upon information and belief, the exfiltrated data includes the sensitive personal data of Plaintiff and other Class members, including names, dates of birth, addresses, Social Security numbers, health insurance information, medical record information, and diagnosis and treatment information.

18. On or about November 10, 2026, Vortex publicly claimed responsibility for breaching Defendant's network on Vortex's data leak site.[3] Vortex claimed to have exfiltrated approximately 60.5 GB of data, or 16,239 files, from Defendant.[4]

19. Upon information and belief, as of the date of this Complaint, Defendant has not confirmed the Data Breach or notified affected individuals, and has not disclosed the root cause of the Data Breach, the vulnerabilities exploited, or the specific remedial measures undertaken to ensure that such a breach does not occur again.

---

[2] Pyramid Healthcare, Privacy Policy, https://www.pyramid-healthcare.com/privacy-policy/ (last visited Nov. 18, 2026).

[3] Ransomware.live, *supra* note 1.

[4] *Id.*

20. Although the total number of individuals affected nationwide has not been publicly disclosed, upon information and belief, the total number of individuals whose Private Information was compromised in the Data Breach is in the tens of thousands or more.

21. Vortex's listing of Defendant on its data leak site and its claim to possess specific categories and quantities of Defendant's data indicate that the Private Information was not merely exposed but was accessed, acquired, and exfiltrated by criminals who intend to monetize it, whether by extorting Defendant or by publishing or selling the data.

22. On information and belief, the Private Information compromised in Defendant's files accessed by the threat actors was not encrypted. In any event, the threat actors were able to access the Private Information.

23. The access and/or acquisition of the Private Information from Defendant's systems demonstrates that this cyberattack was targeted due to Defendant's status as a business that houses sensitive Private Information. Armed with this Private Information, data thieves (as well as downstream purchasers of the stolen Private Information) can commit a variety of crimes, including as follows: opening new financial accounts in Class members' names, taking out loans in Class members' names, using Class members' information to obtain government benefits, filing fraudulent tax returns using Class members' identification information, obtaining driver's licenses in Class members' names but with different photographs, and giving false information to police during any arrests.

24. Due to Defendant's flawed security measures and Defendant's inadequate response to the Data Breach, Plaintiff and Class members now face a present, substantial, and imminent risk of fraud and identity theft and must deal with that threat forever.

25. Despite widespread knowledge of the dangers of identity theft and fraud associated

with cyberattacks and unauthorized disclosure of Private Information, and despite Defendant's large operating budget, Defendant maintained unreasonably deficient protections prior to the Data Breach, including, but not limited to, a lack of security measures for storing and handling Private Information, as well as inadequate employee training regarding how to access, oversee the protection of, and handle and safeguard this sensitive set of information.

26. Defendant also failed to adequately adopt and train its employees on even the most basic of information security protocols, including storing, locking, encrypting, and limiting access to Plaintiff's and Class members' highly sensitive Private Information; implementing guidelines for accessing, maintaining, and communicating sensitive Private Information; and protecting sensitive Private Information by implementing protocols on how to utilize, store, and handle such information.

27. Defendant's failures caused the unpermitted disclosure of Plaintiff's and Class members' Private Information to unauthorized third-party cybercriminals, and have put Plaintiff and Class members at serious, immediate, and continuous risk of identity theft and fraud.

28. The Data Breach that exposed Plaintiff's and Class members' Private Information was caused by Defendant's violation of its obligations to abide by best practices and industry standards concerning its information security practices and processes.

29. Defendant, despite being a technologically advanced organization, failed to comply with basic security standards or to implement security measures that could have prevented or mitigated the Data Breach.

30. Defendant failed to ensure that all personnel with access to Plaintiff's and Class members' Private Information were properly trained in retrieving, handling, using, and distributing sensitive information. Defendant's personnel were also not properly trained to apply relevant

updates and software patches.

### *C. The Data Breach Was Foreseeable*

31. Defendant has weighty obligations created by industry standards and common law to keep Private Information confidential and to protect it from unauthorized access and disclosure.

32. Plaintiff and Class members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

33. Defendant's data security obligations were particularly acute given the substantial increase in hacks, malware threats, ransomware attacks, and/or other data breaches in various industries, including the industry in which Defendant operates, preceding the date of the Data Breach.

34. Defendant was aware of the risk of data breaches because such breaches have dominated the headlines in recent years.

35. Private information, like the Private Information accessed in the Data Breach, is of great value to hackers and cybercriminals, and the data compromised in the Data Breach can be used in a variety of unlawful manners. Private Information can be used to distinguish, identify, or trace an individual's identity. This can be accomplished alone or in combination with other personal or identifying information that is connected or linked to an individual, such as the information compromised in the Data Breach.

36. Given the nature of the Data Breach, it is foreseeable that the compromised Private Information can now be used by hackers and cybercriminals in a variety of different and harmful ways.

37. Cybercriminals who possess Plaintiff's and Class members' Private Information

can (either in isolation or in tandem with other information) obtain Plaintiff's and Class members' tax returns or open fraudulent credit card or other types of accounts in Plaintiff's and Class members' names.

38. The increase in such attacks, and the attendant risk of future attacks, were widely known to Defendant.

39. As such, this Data Breach was foreseeable. Defendant was cognizant of the huge risk of data breaches because of how common and high-profile data breaches have become with respect to businesses that have custody of Private Information, such as Defendant.

***D. Defendant Failed to Follow FTC Guidelines and Industry Standards***

40. Experts studying cybersecurity routinely identify organizations that collect and store sensitive personally identifiable information, including Private Information, as being particularly vulnerable to cyberattacks because of the value of the data which they collect and maintain. The reason this data is so valuable is because it can be sold and weaponized for purposes of committing various identity theft-related crimes. It is well-known that, because of the value of this data and Private Information, businesses that collect, store, maintain, and otherwise utilize or profit from Private Information must take necessary cybersecurity safeguards to ensure that the data they possess is adequately protected.

41. Government agencies also highlight the importance of cybersecurity practices. For example, the Federal Trade Commission ("FTC") has promulgated numerous guides for businesses, which highlight the importance of implementing reasonable data security practices.

42. According to the FTC, the need for data security should be factored into all business decision-making.

43. In 2016, the FTC updated its publication, *Protecting Personal Information: A*

*Guide for Business*, which established cybersecurity guidelines for businesses.

44. The guidelines note that businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand network vulnerabilities; and implement policies to correct any security problems.

45. The guidelines also recommend that businesses use an intrusion detection system to detect and expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack their systems; watch for large amounts of data being transmitted from their systems; and have a response plan ready in the event of a breach.

46. The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on their network; and verify that third-party service providers have implemented reasonable security measures.

47. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, in some cases treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA"). Orders resulting from these actions further explicate and clarify the measures businesses must take to meet their data security obligations.

48. Defendant failed to properly implement some or all of these (and other) basic data security practices.

49. Defendant's failure to employ reasonable and appropriate measures to protect

against unauthorized access to Private Information falls below the standard of care reflected in the FTC's guidance and enforcement actions.

50. Defendant at all times was fully aware of its obligations to protect Private Information. Defendant was also keenly aware of the significant repercussions that would result from the failure to do so.

51. Several best practices have been identified that, at a minimum, should be implemented by businesses such as Defendant that maintain Private Information. These include, but are not limited to, the following: educating all employees about cybersecurity; requiring strong passwords; maintaining multi-layer security, including firewalls, anti-virus programs, and anti-malware software; utilizing encryption; making data unreadable without a key; implementing multifactor authentication; backing up data; and limiting which particular employees can access sensitive data.

52. Other best cybersecurity practices that are standard in the industry include installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding critical points.

53. These foregoing practices are existing and applicable industry standards. Defendant failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

***E. Defendant's Obligations Under HIPAA***

54. Defendant is a covered entity under HIPAA because it is a health care provider. *See* 45 C.F.R. § 160.103. As alleged above, Defendant acknowledges that it is required to protect

certain information under HIPAA's standards.

55. The HIPAA Security Rule requires covered entities to ensure the confidentiality, integrity, and availability of the electronic protected health information they create, receive, maintain, or transmit, and to protect against reasonably anticipated threats to the security of that information. *See* 45 C.F.R. § 164.306(a).

56. The HIPAA Privacy Rule likewise requires covered entities to "reasonably safeguard protected health information from any intentional or unintentional use or disclosure" that violates the Rule. 45 C.F.R. § 164.530(c)(2)(i). These requirements inform the standard of care that Defendant owed Plaintiff and Class members.

***F. Defendant's Breaches of Its Obligations***

57. Defendant breached its obligations to Plaintiff and Class members because Defendant failed to properly maintain, oversee, and safeguard its computer systems, network, and data. In addition to its obligations under federal and state law, Defendant owed a duty to Plaintiff and Class members to exercise reasonable care when obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, or misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class members to provide reasonable security, including complying with industry standards and requirements, providing training for its staff, and ensuring that its computer systems, networks, and protocols adequately protected the Private Information of Plaintiff and Class members.

58. Defendant's wrongful conduct includes, but is not limited to, the following acts and/or omissions:

a. Failing to maintain an adequate data security system to reduce the risk of data breaches and cyberattacks;

b. Failing to adequately protect Plaintiff's and Class members' Private Information;

c. Failing to implement updates and patches in a timely manner;

d. Failing to properly monitor third-party data security systems for existing intrusions, brute-force attempts, and clearing of event logs;

e. Failing to ensure that all employees and third parties apply all available and necessary security updates;

f. Failing to ensure that all employees and third parties install the latest software patches, update their firewalls, check user account privileges, and ensure proper security practices;

g. Failing to ensure that all employees and third parties practice the principle of least-privilege and maintain credential hygiene;

h. Failing to avoid the use of domain-wide, admin-level service accounts;

i. Failing to adequately oversee employees and third-party vendors;

j. Failing to ensure that all employees and third parties employ or enforce the use of strong, randomized, just-in-time local administrator passwords; and

k. Failing to properly train and supervise employees and third parties in the proper handling of inbound emails.

59. Upon information and belief, as the result of allowing its computer systems to fall into dire need of security upgrading and its inadequate procedures for handling cybersecurity threats, Defendant failed to safeguard Plaintiff's and Class members' Private Information.

60. Accordingly, as further detailed herein, Plaintiff and Class members now face a substantial, increased, and immediate risk of fraud, identity theft, and the disclosure of their most sensitive and deeply personal information.

### *G. Data Breaches Are Harmful and Disruptive*

61. The United States Government Accountability Office ("GAO") released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft may face "substantial costs and time to repair the damage to their good name and credit record."[5]

62. That is because all victims of a data breach may be exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals steal Private Information is to monetize it because there is (unfortunately) a market for Private Information, like the Private Information compromised by the Data Breach.

63. Cybercriminals do this by selling the spoils of their cyberattacks on the illegal market to identity thieves who desire to extort and harass victims, and to take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the greater the number of accurate individual pieces of data an identity thief obtains regarding a person, the easier it is for that thief to take on the victim's identity, or otherwise to harass or track the victim.

64. For example, armed with only a name and a date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information regarding a victim's identity, such as a person's login credentials. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls, deceptive text messages, and phishing emails.

65. Because of the threat of these harms, the FTC recommends that identity theft

[5] U.S. Gov't Accountability Office, GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), https://www.gao.gov/assets/gao-07-737.pdf (last visited Nov. 18, 2026).

victims take several steps to protect their personal and financial information after a data breach such as the Data Breach at issue here, including contacting one of the credit bureaus to place a fraud alert (and potentially obtaining an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.

66. Theft of Private Information is gravely serious. Private Information is an extremely valuable property right.

67. Its value is axiomatic, considering the value of "big data" in corporate America and the fact that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk-to-reward analysis illustrates that Private Information has considerable market value.

68. According to the GAO:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

GAO Report at 29.

69. Private information, such as the Private Information compromised in the Data Breach, is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years. The private information of consumers remains of high value to criminals, as evidenced by the prices paid through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, certain sets of private information can be sold at a price from $40 to $200. Social Security numbers and government-issued ID numbers are particularly valuable. Clearly, all this data has real value – which is why it is often targeted and stolen in the first place.

70. On information and belief, Plaintiff's and Class members' Private Information compromised in the Data Breach is currently in the hands of Vortex, which has advertised it on its data leak site, placing Plaintiff and Class members at a substantial imminent risk of injury, including an increased risk of fraud and identity theft for many years into the future.

71. Thus, Plaintiff and Class members must vigilantly monitor their financial accounts and other indicators of identity theft (*e.g.*, the mail, email, etc.) for many years to come.

### *H. Harm to Plaintiff and the Class*

72. Plaintiff and Class members have suffered or will suffer actual injury from having their Private Information compromised as a result of the Data Breach, including, but not limited to, as follows: (i) the theft of their Private Information by cybercriminals who have advertised it on a data leak site; (ii) damage to and diminution in the value of their Private Information, a form of property that Defendant obtained from Plaintiff and Class members; (iii) violation of their privacy, including the unauthorized acquisition of their highly sensitive Private Information by Vortex; (iv) present, imminent, and impending injury arising from the increased risk of identity theft and fraud; and (v) actual and potential out-of-pocket losses, including the loss of time and the loss of money.

## V. CLASS ACTION ALLEGATIONS

73. Plaintiff brings this nationwide class action individually and on behalf of all others similarly situated pursuant to Rules 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure. The "Class" that Plaintiff seeks to represent is defined as follows:

> All persons whose Private Information was maintained by Defendant and was compromised in the Data Breach.

74. Excluded from the Class are Defendant and Defendant's subsidiaries, affiliates, officers, and directors, and any entity in which Defendant has a controlling interest; and all judges

assigned to hear any aspect of this litigation, as well as their immediate family members.

75. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

76. **Numerosity**. Although Defendant has not publicly disclosed the total number of individuals affected by the Data Breach, Defendant operates 49 locations across seven states, Vortex claims that the exfiltrated data includes 16,239 files, and upon information and belief the Data Breach compromised the Private Information of tens of thousands of individuals or more. Accordingly, the Class is so numerous that joinder of all members is impracticable.

77. **Commonality**. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a. Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class members' Private Information;

b. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d. Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e. Whether Defendant owed a duty to Plaintiff and Class members to safeguard their Private Information;

f. Whether Defendant breached its duties to Plaintiff and Class members to safeguard their Private Information;

g. Whether computer hackers / cybercriminals obtained Plaintiff's and Class members' Private Information in the Data Breach;

h. Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

i. Whether Plaintiff and Class members suffered legally cognizable damages as a result of Defendant's misconduct;

j. Whether Defendant's acts, inactions, and practices complained of herein amount to a breach of contract and/or common law negligence;

k. Whether Defendant failed to provide notice of the Data Breach in a timely and proper manner; and

l. Whether Plaintiff and Class members are entitled to compensatory damages, exemplary damages, punitive damages, equitable relief, and/or injunctive relief.

78. **Typicality**. Plaintiff's claims are typical of those of other Class members because Plaintiff's Private Information, like that of every other Class member, was compromised by the Data Breach. Further, Plaintiff, like all Class members, was injured by Defendant's uniform conduct. Plaintiff is advancing the same claims and legal theories individually and on behalf of all other Class members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of other Class members arise from the same operative facts and are based on the same legal theories.

79. **Adequacy of Representation**. Plaintiff will fairly and adequately represent and protect the interests of the Class, and Plaintiff has no disabling or disqualifying conflicts of interest that would be antagonistic to those of the other members of the Class. The damages and infringement of rights that Plaintiff suffered are typical of the other Class members, and Plaintiff seeks no relief that is antagonistic or adverse to the members of the Class. Plaintiff has a genuine personal interest, not a mere technical interest, in the outcome of this Action. Plaintiff has retained counsel experienced in complex class action litigation, including, but not limited to, data privacy class action litigation, and Plaintiff intends to prosecute this Action vigorously. Therefore, Plaintiff can and will fairly and adequately protect and represent the interests of the Class.

80. **Superiority of Class Action**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of numerous individual lawsuits would not be economically feasible for individual Class members, and certification as a class action will preserve judicial resources by allowing the Class's common issues to be adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in individual actions that are based upon an identical set of facts. Without a class action, it is likely that many members of the Class will remain unaware of the claims they may possess.

81. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class members – whose names and contact information are maintained in Defendant's business records – demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action. This proposed class action does not present any unique management difficulties.

82. Adequate notice can be given to Class members directly using information maintained in Defendant's records.

83. **Predominance**. The issues in this Action are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Defendant has engaged in a common course of conduct toward Plaintiff and Class members. The common issues arising from Defendant's conduct affecting Class members set out above predominate over any individualized issues. Adjudication of these issues in a single action has important and desirable advantages of judicial economy.

84. **Rule 23(b)(2)**. Defendant has acted or refused to act on grounds generally

applicable to the Class, including by failing to implement reasonable data security measures, so that final injunctive relief and corresponding declaratory relief are appropriate with respect to the Class as a whole.

85. **Issue Certification**. Alternatively, particular issues are appropriate for certification under Rule 23(c)(4), including whether Defendant owed Class members a duty to safeguard their Private Information, whether Defendant breached that duty, and whether Defendant's data security practices were consistent with industry standards.

## COUNT I

## NEGLIGENCE

86. Plaintiff repeats and realleges paragraphs 1-72 as if fully set forth herein.

87. Plaintiff and Class members provided their Private Information to Defendant in order to receive health care services through Defendant.

88. Defendant owed a duty to Plaintiff and Class members to exercise reasonable care in securing, safeguarding, storing, and protecting the Private Information of Plaintiff and Class members from being compromised, lost, stolen, accessed, or misused by unauthorized parties.

89. This duty included obligations to take reasonable steps to prevent disclosure of the Private Information, and to safeguard the information from theft. Defendant's duties included the responsibility to design, implement, and monitor its data security systems, policies, and processes to protect against reasonably foreseeable data breaches such as this Data Breach.

90. Defendant owed a duty of care to Plaintiff and Class members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, its policies and procedures, and the personnel responsible for them adequately protected the Private Information.

91. Defendant owed a duty of care to safeguard the Private Information due to the foreseeable risk of data breaches and the severe consequences that would result from its failure to safeguard Private Information.

92. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and those individuals who entrusted Defendant with their Private Information, which duty is recognized by common law.

93. In addition, the standard of reasonable care is informed by Section 5 of the FTCA, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

94. Defendant's duty to use reasonable care in protecting Private Information arose under common law and is informed by HIPAA and industry standards to protect Private Information that it acquires, maintains, or stores.

95. Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class members could and would suffer if their Private Information were wrongfully disclosed.

96. Defendant had a special relationship with Plaintiff and Class members. Plaintiff's and Class members' willingness to entrust Defendant with Plaintiff's and Class members' Private Information in order to receive health care services was predicated on the understanding that Defendant would take adequate security precautions to protect that Private Information.

97. By assuming the responsibility to collect and store this data, Defendant had duties of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft.

98. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class members' Private Information, as alleged and discussed above.

99. It was foreseeable that Defendant's failure to use reasonable measures to protect Class members' Private Information would result in injury to Plaintiff and Class members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches against companies that have custody of Private Information.

100. The imposition of a duty of care on Defendant to safeguard the Private Information it maintained, transferred, stored, or otherwise used is appropriate because any (minimal to non-existent) social utility of Defendant's conduct in failing to protect the Private Information is outweighed by the injuries suffered by Plaintiff and Class members as a result of the Data Breach.

101. As a direct and proximate result of Defendant's negligence, Plaintiff and Class members are at a current and ongoing imminent risk of identity theft, and Plaintiff and Class members have sustained or are reasonably certain to sustain compensatory damages, including the following: (i) invasion of privacy; (ii) financial out-of-pocket costs incurred mitigating the material risk and imminent threat of identity theft; (iii) loss of time and loss of productivity incurred mitigating the material risk and imminent threat of identity theft; (iv) financial out-of-pocket costs incurred due to actual identity theft; (v) loss of time incurred due to actual identity theft; (vi) loss of time due to increased spam and targeted marketing emails; (vii) diminution of value of their Private Information; (viii) future costs of identity theft monitoring and/or credit monitoring; (ix) anxiety, annoyance, and nuisance; and (x) the continued risk to Private Information, which remains in Defendant's and the threat actors' respective control, and which is subject to further breaches, including for so long as Defendant fails to undertake appropriate and adequate measures to protect

Plaintiff's and Class members' Private Information.

102. Plaintiff and Class members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

## COUNT II

## BREACH OF IMPLIED CONTRACT

103. Plaintiff repeats and realleges paragraphs 1-72 as if fully set forth herein.

104. In connection with receiving health care services from Defendant, Plaintiff and Class members entrusted Defendant with their Private Information.

105. Defendant had an implied contract with Plaintiff and Class members that it would protect the Private Information it collected from them.

106. Plaintiff and Class members were required to deliver their Private Information to Defendant in order to receive health care services from Defendant. In doing so, they were of the belief that this information would be safely guarded.

107. Defendant accepted possession of Plaintiff's and Class members' Private Information for the purpose of providing and administering health care services.

108. Through Defendant's provision of health care services to Plaintiff and Class members, Defendant knew or should have known that it must protect Plaintiff's and Class members' confidential Private Information in accordance with industry best practices.

109. Pursuant to these implied contracts, Defendant agreed to certain implied promises to Plaintiff and Class members, including but not limited to the following: (i) taking steps to ensure that anyone who is granted access to Private Information also protects the confidentiality of that data; (ii) taking steps to ensure that the Private Information placed in control of Defendant's employees is restricted and limited only to achieve authorized business purposes; (iii) restricting Private Information access only to employees and/or agents who are qualified and trained; (iv)

designing and implementing appropriate retention policies to protect Private Information; (v) applying or requiring proper encryption and/or the separation of different data sets containing Private Information; (vi) implementing multifactor authentication for access to Private Information; and (vii) taking other steps to protect against foreseeable breaches.

110. By entering into such implied contract, Plaintiff and Class members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

111. Defendant violated these implied contracts and these implied promises by failing to employ reasonable and adequate security measures to secure Plaintiff's and Class members' Private Information.

112. Plaintiff's and Class members' Private Information would not have been entrusted to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

113. Plaintiff and Class members fully and adequately performed their obligations under their implied contracts with Defendant.

114. Plaintiff and Class members have been damaged by Defendant's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein. Plaintiff and Class members seek damages, including restitution, actual damages, nominal damages, and any other awardable form of damages, in an amount to be proven at trial.

## COUNT III

## DECLARATORY JUDGMENT

115. Plaintiff repeats and realleges paragraphs 1-72 as if fully set forth herein.

116. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights, statuses, and legal relations of the parties and

to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of federal and state law as described in this Complaint.

117. An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class members' Private Information and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class members from further data breaches that compromise their Private Information. Plaintiff alleges that Defendant's data security measures remain inadequate. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of Plaintiff's Private Information and remains at imminent risk that further compromises of Plaintiff's Private Information will occur in the future.

118. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owes a legal duty to secure Private Information and to timely notify impacted individuals of a data breach under the common law and state statutes; and

b. Defendant continues to breach this legal duty by failing to employ reasonable measures to secure Private Information in its possession.

119. This Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect Private Information in Defendant's data network.

120. If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at Defendant occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified, and Plaintiff will be forced to bring multiple lawsuits to rectify the same conduct.

121. The hardship to Plaintiff if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damages. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable protective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

122. Issuance of the requested injunction is in the public interest. Such an injunction would benefit the public by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiff and Class members whose confidential information would be further compromised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for relief as follows:

A. For an Order certifying this case as a class action and appointing Plaintiff and Plaintiff's counsel to represent the Class;

B. For an award of actual damages, exemplary damages, punitive damages, compensatory damages, and nominal damages, in an amount to be determined, as allowable by law;

C. For injunctive and other equitable relief to ensure the protection of the sensitive information of Plaintiff and the Class, which remains in Defendant's possession;

D. For an award of attorneys' fees and costs, and any other expenses, including expert witness fees;

E. Pre- and post-judgment interest on any amounts awarded; and

F. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.

DATED: November 18, 2026

Respectfully submitted,

*/s/ William M. Kozich*
William M. Kozich
**CAROSELLI BEACHLER & COLEMAN, L.L.C.**
20 Stanwix Street, Suite 700
Pittsburgh, Pennsylvania
Telephone: (412) 253-2925
E-mail: wkozich@cbmclaw.com

Israel David (*pro hac vice* forthcoming)
Adam M. Harris (*pro hac vice* forthcoming)
**ISRAEL DAVID LLC**
60 Broad Street, Suite 2900
New York, New York 10004
Telephone: (212) 350-8850
israel.david@davidllc.com
adam.harris@davidllc.com

Mark A. Cianci (*pro hac vice* forthcoming)
**ISRAEL DAVID LLC**
399 Boylston Street, Floor 6, Suite 23
Boston, Massachusetts 02116
Telephone: (617) 295-7771
mark.cianci@davidllc.com

*Attorneys for Plaintiff and the Proposed Class*